484 A.2d 738

**COMMONWEALTH of Pennsylvania, Appellee,**

**v.**

**Gregory BROWN, Appellant.**

Supreme Court of Pennsylvania.

Argued April 9, 1984.

Decided Nov. 20, 1984.

John W. Packel, Chief, Appeals Div., Karl Baker, Philadelphia, for appellant.

Robert B. Lawler, Chief, Appeals Div., Garrold Tennis, Asst. Dist. Attys., Philadelphia, for appellee.

Before NIX, C.J., and LARSEN, FLAHERTY, McDERMOTT, HUTCHINSON, ZAPPALA and PAPADAKOS, JJ.

## OPINION OF THE COURT

PAPADAKOS, Justice.

This is the appeal of Gregory Brown from the Superior Court's Order, *Commonwealth v. Brown*, 314 Pa.Superior Ct. 226, 460 A.2d 1111 (1983), affirming a Philadelphia County Common Pleas Court's Order entered on October 14, 1981, by the Honorable Marvin R. Halbert, finding Appellant guilty of Robbery, a Felony in the Third Degree, and sentencing him to one and one-half to five years of confinement.

Appellant was arrested on December 1, 1978, and charged under a juvenile petition with Robbery, Theft, and Receiving Stolen Property. On May 2, 1979, despite the fact that Appellant was a minor when arrested, the Honorable Doris M. Harris of the Philadelphia County Common Pleas Court certified that Appellant stand trial as an adult. Following the Certification Order, Appellant was charged in the Criminal Trial Division of the Philadelphia Court of Common Pleas with the crime of robbery.

A motion to suppress the Commonwealth's evidence was presented and denied on September 19, 1979, before Judge Halbert, this testimony being later incorporated as part of the trial. A motion to recuse the suppression judge as trial

judge was denied [1], and Appellant's case was listed for trial on November 1, 1979, before Judge Halbert sitting as the factfinder.

Appellant was convicted of Robbery as a Third Degree Felony and, after receiving a sentence of one and one-half to five years incarceration, timely filed a notice of appeal to the Superior Court. Superior Court affirmed and this appeal followed.

Appellant now argues 1) that insufficient evidence was presented at trial to establish that he committed a robbery "by force however slight," and 2) that the Superior Court affirmed the trial court on the "force however slight" finding from evidence adduced at a preliminary hearing and not at Appellant's trial.

Our review of the record indicates an uncomplicated factual pattern which can easily be summarized. The victim had just cashed a check for $221.00, which she placed in her purse. She left her bank, visited a doctor in a nearby clinic, and as she left from the doctor's office heard running steps behind her. The purse slung over her arm was grabbed and she saw Appellant run away from her with the purse. No one else was adjacent to her. She began screaming. Appellant argues that this is insufficient to establish "force however slight" and that the robbery conviction against him cannot stand. We disagree.

The crime of robbery is currently defined in the Crimes Code, Act of December 6, 1972, P.L. 1482, No. 334 § 1, as amended, June 24, 1976, P.L. 425, No. 102 § 1, immediately effective 18 Pa.C.S. § 3701, and provides as follows:

3701. Robbery

**(a) Offense defined.—**

(1) A person is guilty of robbery if, in the course of committing a theft, he:

(i) inflicts serious bodily injury upon another;

---

**1.** The validity of the recusal denial has not been raised as an issue before the lower courts and before our Court.

(ii) threatens another with or intentionally puts him in fear of immediate serious bodily injury;

(iii) commits or threatens immediately to commit any felony of the first or second degree;

(iv) inflicts bodily injury upon another or threatens another with or intentionally puts him in fear of immediate bodily injury; or

(v) physically takes or removes property from the person of another by force however slight.

(2) An act shall be deemed "in the course of committing a theft" if it occurs in an attempt to commit theft or in flight after the attempt or commission.

**(b) Grading.**—Robbery under subsection (a)(1)(iv) is a felony of the second degree; robbery under subsection (a)(1)(v) is a felony of the third degree; otherwise, it is a felony of the first degree.

Prior to the Enactment of the 1972 Crimes Code, our statutes did not define the crime of robbery [2] and we defined it by its common law definition:

[Robbery] is the felonious and forcible taking from the person of another of goods or money to any value by violence or putting in fear.

*Commonwealth v. Darcy*, 362 Pa. 259, 278, 66 A.2d 663, 673 (1949); *Commonwealth v. Dantine*, 261 Pa. 496, 498, 104 A. 672, 673 (1918); *Commonwealth v. Snelling*, 4 Binn. 379 (1812).

The degree of force (actual or constructive) used was immaterial, so long as it was sufficient to compel the victim to part with his property. The 1972 Crimes Code significantly changed the force requirement needed to commit a robbery by defining robbery as follows:

(1) A person is guilty of robbery if, in the course of committing a theft, he:

(i) inflicts serious bodily injury upon another;

---

**2.** See Penal Code of 1939, Act of June 24, 1939, P.L. 872, §§ 704, 705, formerly 18 P.S. §§ 4704, 4705 and Act of March 31, 1860, P.L. 382, § 102.

(ii) threatens another with or unintentionally puts him in fear of immediate serious bodily injury; or

(iii) commits or threatens immediately to commit any felony of the first or second degree.

18 Pa.C.S. § 3701(a)(1).

By defining robbery in terms of "serious bodily injury," the Legislature abandoned the common law "force no matter how slight" requirement for robbery and created a new, less severe, "bodily injury" standard which it applied in defining the crime of theft by extortion at 18 Pa.C.S. § 3923. That section, in pertinent part, stated:

(a) Offense defined—A person is guilty of theft if he intentionally obtains or withholds property of another by threatening to:

(1) inflict bodily injury on anyone or commit another criminal offense.

Distinguishing between a "serious bodily injury" and a "bodily injury" standard was certainly within the Legislature's prerogative and represented its recognition that the amount of force used or threatened on a person deserved separate treatment and penalty.[3] Distinguishing between robbery and theft by extortion, however, proved harder than expected and in reaction to the problem of determining the amount of force needed to sustain a robbery charge, the Legislature removed the references to bodily injury in subsection (1) of § 3923(a)(1) and amended § 3701 by adding subsections (iv) and (v).

Subsection (iv) provides that a robbery occurs when in the course of committing a theft the defendant "inflicts bodily injury upon another or threatens another with or intentionally puts him in fear of immediate bodily injury," 18 Pa.C.S. § 3701(a)(1)(iv), and is graded as a felony of the second degree with a penalty of up to ten (10) years imprisonment. Under Subsection (v), a robbery occurs where in the course of committing a theft the defendant "physically takes or

**3.** The maximum sentence for robbery was twenty years and the maximum penalty for theft by extortion was five years, 18 Pa.C.S. §§ 3923, 3701(b), 1104.

removes property from the person of another by force, however slight," 18 Pa.C.S. § 3701(a)(1)(v), and is graded as a felony of the third degree with a penalty of up to seven (7) years imprisonment.

By including subsections (iv) and (v) under the Robbery Section of the Crimes Code, both force standards were once again merged under one crime, thus reinstating the common law standard. In so doing, our Legislature has eliminated the vexing problem of determining the amount of force required to commit a robbery. The amount of force used is relevant only when grading the offense as a first, second, or third degree felony, and is in keeping with the legislative directive to punish robbers according to the amount of violence they inflict on their victims.

It is clear to us that any amount of force applied to a person while committing a theft brings that act within the scope of robbery under § 3701(1)(a)(v). This force, of course, may be either actual or constructive. Actual force is applied to the body; constructive force is the use of threatening words or gestures, and operates on the mind. *Commonwealth v. Snelling,* 4 Binn. at 383.

The degree of actual force is immaterial, so long as it is sufficient to separate the victim from his property in, on or about his body. Any injury to the victim, or any struggle to obtain the property, or any resistance on his part which requires a greater counter attack to effect the taking is sufficient. The same is true if the force used, although insufficient to frighten the victim, surprises him into yielding his property.

The victim's testimony reveals that she left her doctor's clinic and apprehended the presence of a "black guy" who came up from behind her and took from her person a pocketbook hanging from her left arm.[4] The force used in

---

4. While the victim did not actually testify that appellant took the purse from her, there is no question from reading all her testimony at the September 19, 1979 suppression hearing and drawing all reasonable inferences in favor of the Commonwealth as verdict winner that he

taking the purse from the victim's arm was a harmful touching of the person, accompanied with sufficient force to compel the victim to part with the conscious control of her property, and supports a robbery conviction under § 3701. This conduct substantially differs from the case of the thief who merely takes the property of another with intent permanently to deprive him thereof, using no force or threat of force on the victim—like the pickpocket (Chapter 39 of the Crimes Code). Such conduct is non-violent, poses no threat to the victim who is unaware of the taking, and is accordingly graded less severely than robbery. A victim who is aware of the taking of property from his person is apt to reflex action to protect himself and his property and thus may be injured by the felon.

For this reason, robbery has always been considered a greater harm against society because violence is caused or threatened. The ordinary citizen has the right to go about his way free from the fear of attack to his person from those who would deprive him of control over his goods. That right is violated even by the slight tug on the arm by the purse thief who must use force to wrench the purse from the arm of the victim without regard to her safety. Accordingly, we find that the evidence was sufficient to establish robbery under § 3701(a)(1)(v).

Appellant also argues that Superior Court found that sufficient evidence existed to support a § 3701(a)(1)(v) conviction using evidence adduced at a preliminary hearing, and not at Appellant's trial. This argument is without merit.

Accepting as true all the evidence at trial and all the reasonable inferences therefrom, a fact-finder could easily have determined beyond a reasonable doubt that Appellant took the purse with force. *Commonwealth v. Hamm*, 474 Pa. 487, 378 A.2d 1219 (1977). *See also, Commonwealth v. Mastrangelo*, 489 Pa. 254, 414 A.2d 54 (1980), *Commonwealth v. Green*, 464 Pa. 557, 347 A.2d 682 (1975), and

did, indeed, snatch the purse from her and that she immediately screamed at him to retrieve her purse and money.

*Commonwealth v. Carbonetto,* 455 Pa. 93, 314 A.2d 304 (1974).

The robbery took place during the day, in a well-lit place. Appellant was aware of her predator and within seconds of the robbery was chasing after him, screaming for her purse and its contents. This evidence is sufficient upon which to base Appellant's conviction, and we perceive no error in the trial court's actions.

■ Superior Court also found the trial evidence sufficient upon which to base a conviction (p. 742), but referred to evidence of the victim adduced at a preliminary hearing to amplify the picture presented at trial. Once a reviewing court satisfies itself from the *record* that sufficient evidence was presented at trial to support a conviction, its inquiry ceases. There is simply no need to look outside the record for non-trial statements or evidence to amplify the trial evidence, and such practice is expressly disavowed. Since sufficient evidence existed at trial to sustain the robbery conviction, we affirm Superior Court's Order.

HUTCHINSON, J., concurred in the result.

ZAPPALA, J., filed a dissenting opinion in which LARSEN, J., joined.

ZAPPALA, Justice, dissenting.

I dissent from the majority's finding that the evidence was sufficient to support the conviction of robbery. I would reduce the degree of guilt to theft and remand for resentencing.

At the time of trial before Judge Marvin Halbert, the Commonwealth introduced the testimony of the complainant and Officer Sgro which had been elicited during a hearing on a motion to suppress made by the defendant. The Commonwealth did not call any additional witnesses and

rested its case on the incorporated testimony of those two witnesses.

The complainant's testimony of the events was limited:

Q. Briefly describe to his Honor what happened to you that day.

A. Well, I was coming from the bank to cash my check. I went into the clinic to see the doctor that day. I came out, and the black guy was coming in back of me, running. I had this same pocketbook on this side (indicating)—

THE COURT: On what side, please?

THE WITNESS: On this side (indicating)

THE COURT: On her left arm.

THE WITNESS: I was screaming out, hoping that he would give me the pocketbook back and the money.

[Suppression hearing at 45].

The majority's attempt to distinguish the factual circumstances of this case from a pickpocket "who merely takes the property of another ... using no force or threat of force on the victim" must necessarily fail. Because the record is devoid of any evidence of force, the majority itself is compelled to supply the evidence of an essential element of the crime.

The majority underscores the fact that the complainant had the purse on her arm. Based upon that fact, it finds that force was used. It has effectively concluded that a taking from the person involves force per se. The weakness of this reasoning is demonstrated by its own example of a pickpocket. It is necessary to establish that a modicum of force was used. That goes beyond showing a mere taking from the person. The evidence would have been sufficient if it showed that Appellant engaged in a struggle to get the purse away from the complainant. This is distinguishable from a victim screaming and pursuing the perpetrator after the fact. The evidence would be suffi-

cient also if the complainant had been holding the purse in her hand, in which case Appellant would have had to use at least a slight degree of force to remove it, *Commonwealth v. Frison,* 301 Pa.Superior Ct. 498, 448 A.2d 18 (1982). In the instant case, the evidence clearly establishes only that the complainant had the purse on her arm. Emphasizing the fact that the complainant was aware of the Appellant's presence, the majority abruptly alters the concept of force by substituting a state of mind for a physical act to satisfy the elements of robbery. Do we now venture into an unprecedented legal concept that the removal of personal possessions from one's person without more is "robbery"?

For whatever reason, the Commonwealth decided to proceed to trial with only the testimony from the suppression hearing. The record demonstrates that this use was not contemplated at the time of the suppression hearing. [Suppression hearing at 37]. This may account for the minimal testimony of the complainant as to the relevant facts, but it will not excuse the prosecutor's failure to present sufficient evidence to establish the elements of robbery. The failure of the Commonwealth to properly develop its case has forced the majority to become not only a finder of fact, but a *creator* of fact.

If there were sufficient facts to establish the requisite force necessary for robbery, then it was the prosecutor's duty to introduce the evidence at trial. The issue presented before this Court would have been avoided. The majority then would not have felt the need to fill the void left by a lack of testimony with speculation. It should not now be left to this Court to emasculate reason in order to protect prosecutorial ineptitude. Today the Commonwealth asks us to forego our function as an appellate court and take up the mantle of prosecutor.

I, for one, decline to do so.

LARSEN, J., joins in this dissenting opinion.